Richard **NICHOLS**, by his next friend, Carl M. Nichols, movant,

v.

**UNION UNDERWEAR COMPANY, INC., respondent.**

Supreme Court of Kentucky.

June 24, 1980.

Edward M. Post, Robert J. Brand, Louisville, for movant.

Charles Landrum, Jr., Lexington, for respondent.

STEPHENS, Justice.*

This is a products liability case. Four-year-old Richard Nichols was badly burned while playing with matches when his T-shirt caught fire. Through his father, as next friend, he sued Union Underwear Company, Inc., the manufacturer and seller of the shirt. The basis of the suit was strict liability for design defect. Following a jury trial in the Franklin Circuit Court, a verdict was returned for Union Underwear and judgment was entered on the verdict.

Nichols appealed to the Court of Appeals, which affirmed the judgment. Because of the importance of the question presented, we granted discretionary review. The sole issue to be determined is whether the trial court erred in instructing the jury on the definition of "unreasonably dangerous" which appears in comment i of section 402A of the second Restatement of Torts.

Because we are concerned with the instruction given, we need not burden this opinion with an extensive description of the evidence presented to the jury. Nichols concedes that the evidence was of such a nature that the jury had a right to believe that presented by Union Underwear. However, it is relevant here that the proof presented concerned itself with the following major areas: (1) the flammability of the fabric of the shirt; (2) the risk of clothing-inflicted burns to children; (3) the availability of commercially feasible, alternative designs and fabrics for this particular article of clothing; (4) the extent of

* The preparation of this opinion was assigned to the writer prior to the effective date of SCR 1.020(4).

consumer awareness of the danger inherent in flammable children's clothing; (5) the alleged lack of such awareness of danger by this child and his mother; and (6) the significance of the fact that the fabric complies with applicable federal statutory standards for flammability. It is clear that the jury was given ample evidence on which to base its decision.

The doctrine of strict liability was adopted in this state in the case of *Dealers Transport Co. v. Battery Distributing Co.*, Ky., 402 S.W.2d 441 (1966). While the court recognized that strict liability had obtained "substantial acceptance" throughout the country, it hung its judicial hat on the American Law Institute's revised restatement of the law of torts. The court adopted section 402A, which provides:

(1) One who sells any product in a defective condition *unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement, Second, Torts § 402A (1965) (emphasis added).

Since the *Dealers Transport* case, there have been a substantial number of products liability cases before us. In *Jones v. Hutchinson Manufacturing, Inc.*, Ky., 502 S.W.2d 66 (1973), we specifically applied the rule to liability for defective product design. In every case, however, the golden thread that holds the rule together is the Restatement, Second, Torts § 402A, quoted above.

A careful reading of section 402A reveals that, as a condition precedent to strict liability becoming operative in a particular case, the product sold must be "unreasonably dangerous" to the user or consumer or to his property. This court has never specifically addressed the question of how that concept should be presented in the instructions to the jury in a defective design case. Because the trial judge chose to present it in the form of a definition in the instructions in this case and because Nichols claims prejudicial error resulted, we are now faced with that problem.

The instructions given were based on section 402A of the Restatement, as follows:

Instruction # 1

If you believe from the evidence that an ordinarily prudent manufacturer of children's T-shirts should have foreseen that a child wearing its T-shirts substantially in the manner it was being worn at the time of the accident and that a child, while wearing one of its T-shirts might expose it to fire and in that event suffer injury from the shirt burning, either because of the composition of the shirt and/or because of his manner of wearing it, then the Court instructs you that the defendant had these duties:

A. Not to manufacture and sell a product that was unreasonably dangerous for children, including Ricky Nichols; and

B. To exercise that degree of care as would be expected of an ordinarily prudent manufacturer to manufacture and sell a product that would be reasonably safe for children including Ricky Nichols.

Instruction # 2

If you believe the defendant failed to perform either of the duties set out in Instruction # 1 hereof, and such failure or failures was a substantial factor in bringing about the injury to the Plaintiff, then you will find for the plaintiff; but unless you so believe, you will find for the defendant.

No objection was raised by Nichols to these instructions which simply set out the doctrine of strict liability provided in sec-

tion 402A as applied to the facts developed in the present case. Then, over the strenuous and continuing objection of Nichols, the court gave an instruction defining "unreasonably dangerous."

Instruction # 4

A product is 'unreasonably dangerous' only if it is dangerous to an extent beyond that which would be contemplated by an ordinary adult purchaser thereof, with ordinary knowledge as to its inherent characteristics.

Nichols contends that this instruction was erroneous and prejudicial. He claims that danger beyond an ordinary purchaser's contemplation is only one of several factors to be considered in determining if a product is, in fact, unreasonably dangerous. Further, he argues that a product's danger does not become reasonable simply because it is within the contemplation or actual awareness of the average consumer. Finally, he contends that no definition of the term "unreasonably dangerous" should have been given, but, as one was given, it should not have singled out one factor (consumer awareness) but, instead, should have brought *all* factors relevant to that determination to the attention of the jury.

The issue of what constitutes unreasonable dangerousness has been the subject of growing controversy. Much has been written by courts and legal scholars. *See, e.g.,* Darling, *The Patent Danger Rule: An Analysis and A Survey of its Vitality,* 29 Mercer L.Rev. 583 (1978); Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss.L.J. 825 (1973); W. Prosser, Handbook of the Law of Torts ch. 17 (4th ed. 1971); and cases cited therein.

The instruction given was based on comment i to section 402A of the Restatement,

which provides, in pertinent part: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

It is clear that instruction four limited the jury to finding the product unreasonably if, *and only if,* it was more dangerous than an ordinary adult would expect it to be. In effect, the product cannot be unreasonably dangerous if the omnipresent and elusive "reasonable man"—ordinary adult—knows about the danger. Under this instruction, the obviousness of the danger becomes the sole determinant of the reasonableness of a danger, rather than simply being one of many factors.

The effect of this instruction is to insulate a product from liability simply because it is patently dangerous, or because it is no more dangerous than would be anticipated by the ordinary person. Some seventeen jurisdictions adhere to this rule, eighteen have repudiated it, and sixteen, including Kentucky, have not addressed the issue. See Darling, *supra,* at 604–09. We now join those which have considered and rejected "patent danger" or "consumer expectation" as an absolute defense to strict liability for defective design. As Dean Wade, Reporter for the Restatement, Second, Torts, put it:

In many situations, particularly involving design matters, the consumer would not know what to expect, because he would have no idea how safe the product could be made.

Wade, *supra,* at 829.

We are immediately met with the difficult problem [1] of describing the standard to which the fact finder should compare the

1. It seems to us that the entire field of product liability law is especially fertile for comprehensive legislative review and action. Its rows need to be stably defined by legislative survey of the socioeconomic policies which determine its contours. Additionally, uniformity of law among all the states may be desirable because product liability insurance rates are set on a countrywide basis. Thus, the current system of having individual state courts develop product liability law on a case-to-case basis is not

consistent with commercial necessity. Uniformity and stability in this area are desirable if product liability insurance rates are to be stabilized at reasonable levels. Under the sponsorship of the U.S. Department of Commerce, the Task Force on Product Liability and Accident Compensation, chaired by Professor Victor E. Schwartz, has published its Model Uniform Product Liability Act at 44 Fed.Reg. 62714 (1979). We respectfully call these matters to the attention of the General Assembly.

product to decide whether it was in a "defective condition unreasonably dangerous" when sold. In *Ulrich v. Kasco Abrasives Company*, Ky., 532 S.W.2d 197, 200 (1976), we pointed out that the inquiry is to be made from the perspective of a "prudent manufacturer of similar products fully apprised of the condition and tendencies of the product when he put it into the stream of commerce . . . ." This is because strict liability makes unnecessary proof by the plaintiff of what a prudent manufacturer exercising ordinary care actually should have discovered and foreseen as in a negligence action. This idea is inherent in the concept of defectiveness.

> Dean John Wade and Dean Page Keeton have provided the most widely adopted definition of defectiveness as it applies to strict products liability. The strict liability standard is no different from that of negligence, they say, except that the seller is presumed to have knowledge of the actual condition of the product when it leaves his hands. In other words, as long as the product is shown to be in a defective condition when sold, the plaintiff need not go further and prove that the seller either knew or should have known of the defect.

Phillips, *The Standard for Determining Defectiveness in Products Liability*, 46 U.Cin. L.Rev. 101, 103 (1977).

We note, however, that this "knowledge" characteristic is not as significant in *design* defect cases as in *manufacturing* defect cases. In design defect cases liability is founded upon the premise that the design itself selected by the manufacturer amounted to a defective condition which was unreasonably dangerous; actual knowledge of the design is not the question. "Probably the main difference between design defects and construction flaws is that with respect to design defects the feasibility of making a safer product is usually in issue, while feasibility is not generally an issue for construction flaws." Phillips, *supra*, at 104–05.

This observation was central to our reasoning in *Jones v. Hutchinson Manufacturing, Inc.*, Ky., 502 S.W.2d 66, 69–70 (1973), when we stated, "We think it apparent that when the claim asserted is against a manufacturer for deficient design of its product the distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned. In either event the standard required is reasonable care." Thus, the fact finder in a design defect case must decide whether the manufacturer that placed in commerce the product made according to an intended design acted prudently, i.e., was the design a defective condition which was unreasonably dangerous.

■ We believe that consumer knowledge, the factor considered below, is only one of the factors that should be before the jury in determining whether a product is unreasonably dangerous. We will not set out an exclusive list of the factors which lead to this determination. In *Jones, supra*, we discussed deviation from industry standard as a factor; in *Kasco Abrasives, supra*, we recognized the obviousness of the danger and presence of a warning as relevant. Noted commentators have suggested many factors.[2] But the facts of the individual case will determine what is relevant to each action.

■ In the event of another trial, the jury should be instructed as follows:

> You will find for the plaintiff only if you are satisfied from the evidence that the material of which the T-shirt was made created such a risk of its being accidentally set on fire by a child wearing it that an ordinarily prudent company engaged in the manufacture of clothing, being fully aware of the risk, would not have put it on the market; otherwise, you will find for the defendant.

The decision of the Court of Appeals and the judgment of the Franklin Circuit Court are reversed and the cause is remanded for

---

2. *See, e.g.*, Phillips, *supra*, at 112–19; Fischer, *The Meaning of Defect*, 39 Mo.L.Rev. 339, 359 (1974); Wade, *supra*, at 837–38.

a new trial consistent with the views herein expressed.

All concur, except STEPHENSON, J., who dissents and files herewith a dissenting opinion.

LUKOWSKY, Justice, concurring.

I agree with the opinion of the majority as far as it goes. However, the opinion leaves the law in products liability design defect cases amorphous. It fails to identify the gut issue.

I believe that whether a design is unreasonably dangerous must be determined by a social utility standard—risk versus benefit. If the benefits to be gained by the consuming public outweigh the risks of danger inherent in a particular design, such a product cannot be "unreasonably dangerous." See Barker v. Lull Engineering Co., Inc., 20 Cal.3d 413, 573 P.2d 443, 143 Cal.Rptr. 225 (1978); Bowman v. General Motors Corp., E.D.Pa., 427 F.Supp. 234 (1977). The bottom line is that the trier of fact is required to balance two pairs of factors existing at the time of manufacture: (1) the likelihood that the product would cause the claimants harm or similar harms, and the seriousness of those harms; against (2) the manufacturer's burden of designing a product that would have prevented those harms, and the adverse effect that alternative design would have on the usefulness of the product. That is to say that the manufacturer is not liable unless at the time of manufacture the magnitude of the danger to the claimant outweighed the utility of the product to the public. 72 C.J.S. Supp. Products Liability § 13; W. Kimble and R. Lesher, Products Liability section 55 (1979). See also, Louisville & Jefferson Co. Bd. of Health v. Mulkins, Ky., 445 S.W.2d 849, 851–52 (1969). The ultimate inquiry is risk versus benefit.

In the event of another trial, I believe the jury should be instructed as follows:

You will find for the Plaintiff if you are satisfied from the evidence that at the time of the manufacture of the cotton and polyester T-shirt the risk of harm from its being accidentally set on fire while being worn by a child outweighed the benefit to the public from its availability in the marketplace. Otherwise, you will find for the defendant.

STEPHENSON, Justice, dissenting.

In my opinion the only error on the part of the trial court was the failure to give a directed verdict to the respondent here.

Ordinarily in "products liability" cases, I think of design defects as failure to provide proper safety measures in design. For example: lawn mowers, farm machinery, etc. In the machinery cases it is the product itself that has the propensity to cause harm to the user.

Here the T-shirt was manufactured in conformity with applicable federal standards for flammability. In the circumstances of this case, it is absurd to have a jury decide whether the T-shirt is "unreasonably dangerous." Had the manufacturer used highly flammable materials in the garment, I could understand submission of the case to the jury, but not in this situation.