Pamela MORALES, Guardian of Gary Thompson, Plaintiff–Appellant,

v.

AMERICAN HONDA MOTOR COMPANY, INC., Defendant–Appellee.

No. 94–5885.

United States Court of Appeals, Sixth Circuit.

Argued May 22, 1995.

Decided Sept. 13, 1995.*

* This decision was originally issued as an "unpublished decision" filed on September 13, 1995. On November 9, 1995, the court designated the opinion as one recommended for full-text publication.

Charles C. Adams, Jr. (argued and briefed), Herren & Adams, Lexington, KY, for plaintiff-appellant.

Richard H. C. Clay (argued and briefed), Woodward, Hobson & Fulton, Louisville, KY, for defendant-appellee.

Before: KENNEDY and JONES, Circuit Judges; HOLSCHUH, District Judge.**

HOLSCHUH, District Judge, delivered the opinion of the court, in which JONES, J., joined. KENNEDY, J. (p. 539), delivered a separate opinion concurring in part and dissenting in part.

HOLSCHUH, District Judge.

This is a products liability action filed by Gary Thompson, by and through his guardian and mother, Pamela Morales, against American Honda Motor Co., Inc., for damages as a result of serious injuries that Gary sustained at age nine and one-half when the Honda motorcycle he was driving collided with a pickup truck. The United States District Court for the Eastern District of Kentucky granted defendant's motion for summary judgment, finding that plaintiff did not establish a reasonable inference that the alleged defects of the motorcycle were a probable cause of the accident. Plaintiff appeals the district court's grant of summary judg-

ment and its denial of plaintiff's post-judgment motions. For the following reasons, we VACATE the district court's grant of summary judgment and REMAND.

**I.**

On November 9, 1991, Gary Thompson, then age nine and one-half, was seriously injured when he drove a 1988 Honda Z50R motorcycle manufactured by American Honda Motor Co., Inc., ("Honda") into the path of an oncoming pickup truck driven by Helen Graham. The accident occurred when Gary drove the motorcycle onto Mt. Hebron Road, a public road, from an unpaved farm road in Garrard County, Kentucky. There were bales of hay 5–1/2 to 6–1/2 feet high lining the farm road, and Graham did not see Gary or the motorcycle until just before the impact. Kentucky State Trooper Ronald G. Wardrip investigated the accident. He was of the opinion that Graham could not have prevented the accident and that the obstructed view contributed to the accident.

As a result of the accident, Gary sustained catastrophic injuries, including a closed head injury which caused Gary to be comatose for three weeks, permanent brain damage, severe cognitive defects, neurobehavioral problems and personality changes. Gary also suffered left hemiplegia, fractures of the left femur, left clavicle and right foot, an open compound fracture of the right tibia and a significant pelvic fracture. Gary has undergone multiple surgeries and extensive attempts at rehabilitation; nonetheless, Gary remains partially paralyzed on his left side and continues to exhibit cognitive defects and neurobehavioral problems. As of May, 1994, Gary had incurred medical expenses in excess of $320,000.00.

Gary's mother, Pamela Morales, purchased the motorcycle for Gary in December, 1988, when Gary was six years old. The owner's manual provided that this motorcycle was "designed for junior riders" and was "not recommended for children under 7 years old." The motorcycle's height from ground to seat was only 22.6 inches; it was opera-

** The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

tional without an ignition key; and it was capable of traveling at speeds of 35–40 miles per hour. The owner's manual also contained a "message to parents" which warned against riding the motorcycle on public roads:

It is illegal to ride this motorcycle on public streets, roads or highways. It must be ridden only in off-road areas where such · activities are permitted. If it becomes necessary to cross a public roadway, remember to get off the motorcycle and push it across.

In addition, on the motorcycle itself was the following warning:

## IMPORTANT NOTICE

THIS VEHICLE IS DESIGNED AND MANUFACTURED FOR OFF–THE–ROAD USE ONLY. IT DOES NOT CONFORM TO FEDERAL MOTOR VEHICLE SAFETY STANDARDS AND OPERATION IN PUBLIC STREETS, ROADS, OR HIGHWAYS IS ILLEGAL.

## REMEMBER

—PRESERVE NATURE—RIDE SAFELY—ALWAYS WEAR A HELMET—READ OWNER'S MANUAL CAREFULLY BEFORE RIDING

Honda chief engineer Kazuo Watanabe[1] had overall responsibility for the development of the 1988 Z50R motorcycle and personally authored the owner's manual. Watanabe stated that it was his decision that the recommended age for the motorcycle should be seven and above. Watanabe also stated that he was not . aware of any testing or research done to determine if that was an appropriate age recommendation for the motorcycle. Further, Watanabe stated that he considered incorporating a safety flag into the design of the motorcycle, but decided against it. Watanabe also stated that he was not aware of the total available accident statistics involving the motorcycle, because it was not necessary for him to consider accidents caused by operator error.

In addition to Honda's warnings, Pamela Morales had established her own rules concerning the motorcycle. She stated:

The Number One rule was that he was to never, ever get on the bike to ride without adult supervision.... He was to never get on the bike without a helmet. And he was to never, ever get near a road.

Morales stated that she told Gary these rules when she bought the motorcycle in 1988, that she regularly communicated these rules to Gary, and that she even reminded Gary of the rules on the morning of the accident.

On March 24, 1993, Pamela Morales commenced this action in the Garrard County Circuit Court, Garrard County, Kentucky, asserting claims of strict liability, breach of warranty and negligence against Honda in connection with Gary's accident. Morales claimed that Honda defectively designed the motorcycle, because its small size combined with the lack of a safety flag gave the motorcycle extremely low visibility. Morales further argued that Honda negligently marketed the motorcycle and negligently failed to warn of its dangerous condition. Morales claimed that Honda's warnings were inadequate, because Honda did not explain the potential consequences of a child riding this motorcycle on the road in terms a child could understand.

Honda subsequently removed the action to the United States District Court for the Eastern District of Kentucky. Honda then moved for summary judgment, alleging, among other things, that Morales could not establish the necessary element of causation for her claims.

The district court granted summary judgment in favor of Honda, finding that Morales had the burden to establish legal causation and had failed to do so. With respect to defective design, the district court stated that Morales presented no evidence that a different design would have prevented the accident. In so finding, the district court did not consider the report of plaintiff's conspicuity

1. We consider the Watanabe deposition, because it was filed in the district court on April 7, 1994, prior to the district court's entry of summary judgment on April 11, 1994. Plaintiff also contends that we should consider the deposition of Robert Clever; however, that deposition was not filed until April 21, 1994, after the district court's entry of summary judgment.

witness, Michael S. Janoff, in which Janoff stated that the driver that hit Gary would have seen Gary's motorcycle for approximately four to nine additional seconds if it had been equipped with a seven-foot bicycle flag. The district court did not consider the Janoff report, because the report was not presented in the form of an affidavit as required by Fed.R.Civ.P. 56(e). The district court went on to note that even if the Court could consider the report, there was no indication that Janoff was qualified to give an expert opinion.

With respect to Morales' claims of inadequate warnings, the district court stated that "even if the owner's manual contained a stronger and more explicit statement warning the rider that a car could hit him if he rode on the road, no reasonable jury could find that Gary would have followed that warning." The district court noted that the owner's manual and the motorcycle itself warned the rider not to venture onto public roads and Morales warned Gary not to ride on the road, yet Gary disobeyed his mother and rode the motorcycle onto Mt. Hebron Road on the day of the accident.

On April 21, 1994, Morales filed motions to alter, amend or reconsider summary judgment; for oral argument on the motion to alter, amend or reconsider summary judgment; and to consider the depositions of Honda's corporate representatives and the affidavit of Pamela Morales, in which Morales states that "[h]ad I known of these dangers I would not have purchased the motorcycle for Gary." The district court denied all of Morales' postjudgment motions. Morales timely filed a notice of appeal with respect to the district court's grant of summary judgment in favor of Honda and the district court's denial of Morales' post-judgment motions.

## II.

### A.

■ We review a grant of summary judgment *de novo,* applying the same test as used by the district court. *Brooks v. American Broadcasting Cos., Inc.,* 932 F.2d 495, 500 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). The party moving for summary judgment bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (footnote omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party). In a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citation omitted); *see also Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992) (citing *Liberty Lobby* ).

■ The burden on the moving party may be discharged if the moving party demonstrates that the nonmoving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339 (6th Cir.1993). If the moving party meets this burden—then and only then—must the nonmoving party go beyond the pleadings in order to set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Martin v. Ohio Turnpike*

*Comm'n,* 968 F.2d 606, 608–09 (6th Cir.1992) (citing *Matsushita, cert. denied,* 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993)). Upon review of all the evidence relevant to the motion for summary judgment, a court should, after viewing the evidence in the light most favorable to the nonmoving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

**B.**

■ This diversity case is governed by the substantive law of Kentucky. Kentucky has adopted the Restatement (Second) of Torts § 402A (1965) test for imposing liability upon manufacturers of unreasonably dangerous products.[2] *Dealers Transport Co. v. Battery Distributing Co.,* 402 S.W.2d 441 (Ky.1965). In applying the "defective condition unreasonably dangerous" standard of section 402A, a manufacturer is presumed to know the qualities, the characteristics and the actual condition of the product at the time of sale, and the relevant inquiry is "whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Montgomery Elevator Co. v. McCullough,* 676 S.W.2d 776, 780 (Ky.1984) (quoting *Nichols v. Union Underwear Co., Inc.,* 602 S.W.2d 429, 433 (Ky.1980)). Bearing on the question of whether a product was manufactured in a "defective condition unreasonably dangerous" are factors such as the feasi-

bility of making the product safer, the patency of the danger of the product, the warnings and instructions given, any subsequent maintenance or repair of the product, misuse of the product and the product's inherently unsafe characteristics. *Id.* at 780.

■ Kentucky law recognizes two theories of strict liability relevant in the present case: design defect and failure to warn. In design defect cases, liability is based on the premise "that the design itself selected by the manufacturer amounted to a defective condition which was unreasonably dangerous." *Nichols,* 602 S.W.2d at 433.

> "We think it apparent that when the claim asserted is against a manufacturer for deficient design of its product the distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned. In either event the standard required is reasonable care." Thus, the fact finder in a design defect case must decide whether the manufacturer that placed in commerce the product made according to an intended design acted prudently, *i.e.,* was the design a defective condition which was unreasonably dangerous.

*Id.* (quoting *Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66, 69–70 (Ky.1973)).

■ With respect to failure to warn, the character of warnings that accompany the product is generally an evidentiary consideration in deciding whether a product is unreasonably unsafe. *Montgomery Elevator,* 676 S.W.2d at 781 (citing *Post v. American Cleaning Equip. Corp.,* 437 S.W.2d 516 (Ky. 1968)); *C & S Fuel, Inc. v. Clark Equip. Co.,* 552 F.Supp. 340, 347 (E.D.Ky.1982) ("[a] product may be unreasonably dangerous in design, unless accompanied by a warning

---

2. Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

that it should not be put to a certain use"). In *Post,* Kentucky's highest court held that a product was unreasonably unsafe if there was a failure to provide adequate warnings to the ultimate user. *Post,* 437 S.W.2d at 520. Under Kentucky law, the duty to warn extends to the dangers likely to result from foreseeable misuse of a product. *Id.* at 521; *Byrd v. Proctor & Gamble Mfg. Co.,* 629 F.Supp. 602, 605 (E.D.Ky.1986). Further, the *Post* court held that in the absence of an adequate warning, the defendant cannot shift to the plaintiff the burden of proving that he would not have misused the product regardless. *Id.* ("[i]t is no answer to say that appellant would have attached the machine to a 220 DC outlet anyway, since he did so in the face of the directions that were furnished"); *see also Leonard v. Uniroyal, Inc.,* 765 F.2d 560, 567 (6th Cir.1985). The *Post* court noted that the fact that reasonable minds could differ as to the adequacy of the warnings made the issue of negligence a jury question. *Post,* 437 S.W.2d at 521.

 Under Kentucky law, a plaintiff has the burden of establishing causation in claims of strict liability, as well as in claims of negligence and breach of implied warranty. *Huffman v. SS. Mary & Elizabeth Hospital,* 475 S.W.2d 631, 633 (Ky.1972); *Holbrook v. Rose,* 458 S.W.2d 155, 157 (Ky.1970). Further, under Kentucky law, causation or proximate cause is defined by the substantial factor test: was the defendant's conduct a substantial factor in bringing about plaintiff's harm? *Deutsch v. Shein,* 597 S.W.2d 141, 144 (Ky.1980); *see also Chandler v. Edgar W. Long, Inc.,* 623 F.2d 1139, 1143 (6th Cir. 1980) (under Kentucky law, "substantial factor" is the proper term for determining degree of proof). Causation is an element which may be proved by circumstantial evidence, and in that situation "the evidence must be sufficient to tilt the balance from possibility to probability." *Calhoun v. Honda Motor Co., Ltd.,* 738 F.2d 126, 130 (6th Cir.1984) (citing *Perkins v. Trailco Mfg. & Sales Co.,* 613 S.W.2d 855 (Ky.1981); *Midwestern V.W. Corp. v. Ringley,* 503 S.W.2d 745 (Ky.1973); *Fields v. Western Kentucky Gas Co.,* 478 S.W.2d 20 (Ky.1972); *Holbrook,* 458 S.W.2d at 157. Generally, under Kentucky law, proximate cause is a question of fact for a jury. *Chandler,* 623 F.2d at 1143 (citing *Claycomb v. Howard,* 493 S.W.2d 714, 718 (Ky.1973)); *Ohio Casualty Ins. Co. v. Department of Highways,* 479 S.W.2d 603, 605 (Ky.1972); *Carruba v. Speno,* 418 S.W.2d 398, 401 (Ky.1967).

### C.

As previously stated, plaintiff claims that the Honda motorcycle was defectively designed because of its extremely low profile and the absence of a safety flag that would have increased its visibility. Plaintiff also claims that Honda's warnings regarding this hazardous condition were inadequate in view of the "foreseeable misuse" of young children riding this motorcycle near or on public roads. For purposes of its motion for summary judgment, Honda conceded that its product was defectively designed and that its warnings were inadequate; nonetheless, Honda argued that even assuming that the product was defectively designed and its warnings inadequate, plaintiff could not show that the defective design and inadequate warnings were a probable cause of the accident. The district court agreed, finding that the record contained "no evidence that supported a finding or raised a reasonable inference that the alleged defects were a 'probable' cause of the accident." For the following reasons, we disagree.

 The burden is on Honda to demonstrate the absence of a genuine issue of material fact regarding causation. Or put differently, Honda must demonstrate that, as a matter of law, no reasonable jury could find that neither Honda's defective design nor its inadequate warnings was a substantial factor contributing to the accident. Honda has failed to meet this burden.

In his deposition, Trooper Ronald G. Wardrip of the Kentucky State Police stated that, in his opinion, the obstructed view of both drivers due to the bales of hay was a factor that contributed to the accident. Certainly, a reasonable jury could find that the extremely low profile of the motorcycle, coupled with its lack of a safety flag—a defective design that Honda has conceded for purposes of summary judgment—was a substantial

factor in bringing about Gary's harm. A factual question is raised as to whether the alleged "defective condition unreasonably dangerous" was a substantial factor contributing to the cause of this accident.

In addition, Honda chief engineer Kazuo Watanabe testified that he considered incorporating a safety flag on the motorcycle but decided against it, that no testing or research was done to determine the appropriate age recommendation for the motorcycle, and that he was not aware of the total available accident statistics involving the motorcycle. This is a case in which a jury—and not the trial judge—should make the determination, after hearing all of the evidence, as to whether the failure to incorporate a safety flag in the design of this childrens motorcycle, a flag, which in this case could have been seen above the bales of hay by an oncoming motorist, was a substantial factor in contributing to the cause of the accident.

■ Further, a factual question is presented as to whether the warnings given with the motorcycle constituted a substantial factor in contributing to the cause of the accident. The only warning that Honda gave was that it was illegal to ride this motorcycle on public roads. No warning was given that specifically pointed out the dangers or potential consequences of children riding a low visibility motorcycle without a safety flag or to caution against the use of this vehicle by small children without the attachment of a safety flag. Indeed, Honda has conceded that for purposes of its summary judgment motion, the warnings given were inadequate. Under *Post*, Honda cannot shift to plaintiff the burden of proving that the product would not have been misused had the product contained stronger warnings. A factual question is raised as to whether Honda's failure to give adequate warnings, admitted for the purpose of the summary judgment motion, was a substantial factor in causing the accident. This is properly a jury question that precludes the entry of summary judgment by the trial court.

In summary, Honda has failed to show the absence of a genuine issue of material fact with respect to whether Honda's design defect or its failure to give adequate warnings was a substantial factor in contributing to the cause of the accident. The standard set out in Fed.R.Civ.P. 56(c) has not been met; the pleadings, depositions, answers to interrogatories and admissions on file do *not* show the absence of a genuine issue of material fact with respect to causation. Thus, the burden on Honda was not met, and it was error on the part of the district court to render summary judgment in favor of Honda.[3] In this case, there is sufficient evidence which, when viewed in the light most favorable to plaintiff, would permit the reasonable inference that Honda's alleged design defect and/or failure to warn was a substantial factor in bringing about Gary's harm. Accordingly, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this decision.[4]

### III.

Plaintiff also contends that the district court erred in denying her motion for reconsideration. In light of our decision to vacate the district court's entry of summary judgment, we need not address this issue.

### IV.

For the foregoing reasons, the district court's entry of summary judgment in favor of defendant is **VACATED,** and this case is **REMANDED** to the district court for fur-

3. In light of this finding, we need not consider the Janoff report and make no determination as to the admissibility of the Janoff report with respect to the fact that it was not submitted in the form of an affidavit. We do note, however, that the Janoff report was a part of the record of this case, filed in the district court on March 29, 1994, as an exhibit to plaintiff's response to defendant's motion to compel compliance with Fed.R.Civ.P. 26. Further, we are of the opinion that if the Janoff report is considered, it would obviously raise a factual question as to the issue of causation.

4. The district court made no findings with respect to defendant's claim that the intervening acts of Morales and Gary's brothers were a superseding cause of the accident or with respect to defendant's claim that Gary's contributory negligence bars recovery. We remand these claims to the district court for consideration.

ther proceedings consistent with this decision.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that if the failure to have a bicycle flag on the motorcycle was defective design then there is an issue of fact whether that failure was a cause of the accident. Although defendant has suggested that to design a motorcycle with a flag would be an unsafe addition since it would be entangled in trees or bushes when the motorcycle is ridden on forest trails or paths where it is designed to be used, only the causation issue is before us.

I dissent, however, from the majority's holding that an inadequate warning could have been a probable cause of this accident. The boy had been warned by his mother not to ride the motorcycle without a helmet. Under Kentucky law, a manufacturer has a duty to give a warning that is adequate and sufficient to alert consumers to the danger and its consequences. *Post v. American Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky.1968). No such duty exists, however, if the user is aware of the product's danger. *Hutt v. Gibson Fiber Glass Products*, 914 F.2d 790, 793 (6th Cir.1990). The manufacturer bears the burden of showing "that the danger was or should have been obvious." *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 565 (6th Cir.1985).

In response to Honda's motion for summary judgment, Morales argued that Honda failed to adequately warn of the consequences of riding the motorcycle on the public streets. Both the owner's manual and the sticker on the bike instructed consumers not to ride the motorcycle on the streets. The rider was instructed to walk the minimotorcycle across the street. Admittedly, neither of these warned of the potential consequences associated with crossing a street. I do not understand the majority to suggest that they had to be warned that the boy should not ride out in front of a car from behind an obstruction, or warned that there are cars on roads and highways. Rather, we must look at the warnings and instructions in light of the facts of this case. In the case at bar, Thompson was tragically injured when he rode his motorcycle onto a main street without looking and was hit by a truck. The obvious danger associated with being on a public street in any manner—be it a car, a bicycle, a motorcycle, or on foot—is that you might be hit by a vehicle. Morales testified in her deposition that she told her son not to ride the motorcycle on the street. This evidence fulfills Honda's initial burden, and the burden of production thus shifted to Morales to show that a factual dispute exists as to whether her son knew he might be hit by a car if he rode on the street. She has not carried this burden. The District Court correctly granted summary judgment on the warnings issue.

Finally, as the District Court pointed out, no reasonable jury could have found that Thompson would have followed any stronger warning.