Kenneth HALL, Plaintiff,

v.

EDWARD J. DeBARTOLO CORP., et al., Defendants.

No. 4:97 CV 1467.

United States District Court, N.D. Ohio.

April 28, 1999.

Seymour R. Brown, Hennenberg & Associates, Cleveland, OH, for Plaintiff.

Susan C. Hastings, Brian T. Robinson, Squire, Sanders & Dempsey, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion for Summary Judgment by Defendants, The Edward J. DeBartolo Corp., Carat Company, Inc., and Thistledown Racing Club, Inc. (Dkt.# 17).

### FACTS

Plaintiff's Complaint sets forth race discrimination and retaliation claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., OHIO REVISED CODE § 4112 et seq., and the equal rights provisions of 42 U.S.C. § 1981. Plaintiff, an African–American, is a former employee of Carat Company, Inc., a wholly-owned subsidiary of The Edward J. DeBartolo Corporation. Carat Company is the current horse racing license holder for Thistledown Racetrack, which license was formerly held by the now defunct Thistledown Racing Club, Inc. Certain regular, non-management employees at Thistledown who work in the mutuel department are represented by the Racing Guild of Ohio, Local 304 ("the Union"), a labor union affiliated with the AFL—CIO. All terms and conditions of employment are governed by a collective bargaining agreement ("CBA") between Carat Company and the Racing Guild.

Plaintiff began his employment at Thistledown Racetrack during the early 1970's. At all times relevant to this complaint, Plaintiff was employed as a mutuel clerk.

In November of 1994, Plaintiff voluntarily submitted his retirement and accepted a lump sum "cash-out" of his vested pension plan benefits because he feared he would lose all his invested funds once the former plan was dissolved. Another black mutuel clerk, and three white mutuel clerks retired around that same time for the same reason. One white employee, Eugene McCormick, retired and accepted the buyout because of a life-threatening heart condition.

Prior to retirement, the six former employees would be selected to work on a given day, if their seniority level and management's particular needs allowed. Following retirement, all six individuals were employed on a casual, as-needed basis, usually one day per week, consistent with an agreed practice dating back to at least the 1970's. The retired employees lost their seniority and, consistent with past practice, received assignments only when all active collective bargaining unit members present at Thistledown had been offered work on that day. Under this practice, retired were paid at the top rung of the pay scale, but did not pay union dues and did not enjoy the protections of the CBA.

Prior to March of 1996, McCormick made it known that he was interested in reinstatement to his previous full-time po-

sition as a mutuel clerk. (Lynch Affidavit at 20–21.) Michael Mackey, Thistledown's track manager, was considering this request and, in the interim, McCormick was permitted to work as a full-time employee on March 9, 1996. In contrast, Plaintiff was not offered casual work on March 9. (Hall timeline, Defendant's Exhibit 9.)

On March 11, 1996, Plaintiff drafted a letter regarding the differing treatment he alone allegedly received on March 9. (Hall letter to Spellman, Defendant's Exhibit 8.) Plaintiff's letter attributed his treatment to "cronyism," confusion, discrimination and "misapplication of honest and fair-play."

Plaintiff's March 11 letter also demanded full-time employment with Thistledown, either as an hourly employee in the mutuel department, or in a salaried management capacity. Prior to this date, Plaintiff had only expressed interest in receiving full-time employment in a supervisory or management position, as opposed to an hourly mutuel clerk position. (Hall Dep. at 67–68, 100).

Faced with Plaintiff's threat of litigation, and the possibility that all retirees might seek rehire, Mackey suspended the past practice of hiring retirees as casual employees, until a new contract (and agreement on retiree status) was negotiated with the Union. Mackey Dep. at 34–37, 63–66, 72–75.

On June 7, 1996, after negotiations of the new CBA were concluded, Mackey approved a letter agreement which established a new status for retired mutuel clerks. (Letter Agreement, Defendant's Exhibit 13.) Pursuant to Mackey's letter agreement, retired employees from the mutuel department, including Plaintiff, could be reemployed full-time as regular members of the collective bargaining unit represented by Racing Guild, Local 304. The retirees would be treated as new hires in all respects, including a 60–day probationary period, seniority accumulation, and mandatory payment of union dues. Further, as new hires, the retirees would be paid at the entry level pay tier, which was $42 per day.

Thistledown offered the new letter agreement to all six retirees, including Plaintiff. (Hall Dep. at 118–119.) Of the six retirees, only Hall and McCormack rejected the offer.

## STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more that a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

## ANALYSIS

In this case, Plaintiff has not claimed any direct evidence of discrimination, and, thus, he must establish an indirect or circumstantial case of race discrimination using the burden shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (adopting *McDonnell Douglas* burden-shifting analysis for claims under 42 U.S.C. § 1981); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981) (adopting the *McDonnell Douglas* burden-shifting analysis for state law discrimination claims).

### 1. *Discrimination claims*

In order to prove a *prima facie* case of discrimination under Title VII, 42 U.S.C. 1981, or Ohio Rev.Code 4112, the plaintiff must establish each of the following elements under the applicable Sixth Circuit modified *McDonnell Douglas* test:

(1) plaintiff was a member of a protected group;

(2) plaintiff applied for employment;

(3) plaintiff was denied employment;

(4) a similarly situated individual outside the protected group was treated more favorably.

*Mitchell*, 964 F.2d at 583.

Defendants concede that Plaintiff has met the first and third elements of the *McDonnell Douglas* test. However, Plaintiff has not met his burden to prove a similarly situated employee was treated more favorable.

The Sixth Circuit held in *Mitchell*, *supra*, "to be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must [not] have ... such *differentiating* or mitigating circumstances that would *distinguish* [them] *or the employer's treatment of them* ...." *Mitchell v. Toledo Hosp.*, 964 F.2d at 583 (emphasis added). "It is fundamen-tal that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in *all respects.*" *Mitchell*, 964 F.2d at 583 *quoting Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir. 1988).

McCormick retired due to dire health reasons and sought reinstatement following his unexpected recovery. In contrast, Plaintiff, as with the other four retirees, retired for financial reasons.

■ Consequently, Plaintiff has not produced any evidence that a similarly situated individual outside the protected group was treated more favorably. Therefore, summary judgment must be granted to Defendant on Plaintiff's discrimination claims as a matter of law.

### 2. *Retaliation*

Plaintiff also alleges retaliation, citing Michael Mackey's March 16, 1996 decision to discontinue the past practice of hiring retirees on a casual, as needed basis, and Thistledown's June 7, 1996 letter agreement offering reemployment to mutuel department retirees as "new hires."

■ In order to establish a *prima facie* case of retaliation, an employee must establish that (a) he engaged in protected activity known to the employer, (b) he suffered an adverse employment action, and (c) there was a causal connection between his protected activity and the adverse employment action. *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

The Sixth Circuit applied the *Mitchell* analysis to a retaliation claim in *Harrison v. Metropolitan Government of Nashville*, 80 F.3d 1107 (6th Cir.1996) ("More importantly, however, is the fact that study of the record in this case reveals an atmosphere in which the plaintiff's activities were scrutinized more carefully than those of the comparably situated employees, both black and white ..." *Id.* at 1119).

In this case, Plaintiff's claims of retaliation must fail as Plaintiff and all similarly situated employees, i.e. recent retirees, were treated the same, regardless of their involvement in alleged protected activity.

Although Hall's letter appears to have precipitated management's decision to stop the practice of employing retirees until after the new contract with the Union was negotiated and settled, Plaintiff does not produce any evidence to show that this decision in any way served to affect Plaintiff exclusively. All similarly situated employees received equal treatment under the new contract.

Plaintiff demanded equality among retirees, and although the terms under which they were treated were not the terms Plaintiff preferred, they were nonetheless applied equally. Therefore, Plaintiff's retaliation claim must fail.

### CONCLUSION

Plaintiff cannot establish a *prima facie* case of race discrimination or retaliation. plaintiff failed to produce any evidence that a racial motive dictated employment decisions, or resulted in differing terms or conditions of employment. Indeed, other than Plaintiff's allegations, there is no support for any inference that McCormick's race was the reason for his reinstatement, or that Plaintiff's race disqualified him from like treatment. Moreover, given the financial and contractual issues before him, Mackey reasonably chose to eliminate a past practice that untimely conflicted with Defendants' business interests. As Plaintiff has conceded the issue of McCormick's revitalized health, and does not dispute the financial and contractual concerns motivating Mackey's decisions, Defendants' motion for summary judgment (Dkt.# 17) is hereby **GRANTED.**

IT IS SO ORDERED.