Michael G. ORR, Plaintiff,

v.

TRUMBULL COUNTY, OHIO, et al., Defendants.

No. 4:98CV2166.

United States District Court, N.D. Ohio.

Dec. 7, 1999.

Alan S. Belkin, Law Offices of Alan S. Belkin, Cleveland, OH, for Michael G. Orr.

Charles. L. Richards, III, Maureen Elizabeth Richards, Law Offices of Charles L. Richards, Warren, OH, for Trumbull County Ohio, Thomas Altiere.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Defendants, Trumbull County, Ohio ("Trumbull County") and Trumbull County Sheriff Thomas Altiere ("Sheriff Altiere") for summary judgment (Dkt.# 28). The Plaintiff, Michael G. Orr ("Orr"), claims in his One Count Amended Complaint (Dkt.# 26) that Trumbull County and Sheriff Altiere, in his official capacity, discharged him from his position as a corrections officer in retaliation for his statements concerning Trumbull County Sheriff's Department ("Sheriff's Department") hiring practices and his association with police union members. The Plaintiff claims that the Defendants' action violated his First Amendment right to free speech and free association, as incorporated against the States through the Fourteenth Amendment. The Plaintiff has asserted this claim pursuant to 42 U.S.C. § 1983.

For the following reasons, the Defendants' Motion for Summary Judgment (Dkt.# 28) is **GRANTED.**

### FACTS

The following facts are not in dispute. The Plaintiff was employed as a corrections officer for Trumbull County from May 18, 1997, to April 21, 1998, at which time he was discharged by the Defendants.

There are two occurrences which have prompted the Plaintiff to assert that his First Amendment rights were violated. First, the Plaintiff contends that he was discharged for his statement to the Sheriff's Department administration, including Sheriff Altiere, concerning the hiring policy for civil and road deputies. Second, the Plaintiff asserts` that he was discharged because he reported to an Ohio Police-men's Benevolence Association ("OPBA") representative that Chief Robert Montgomery ("Chief Montgomery") requested that he provide information concerning a deputy, also an OPBA member, who was encouraging private employment-related lawsuits against the Sheriff's Department.

The following facts provide the context for the above-stated occurrences. The Plaintiff originally sought a position as a corrections officer with the intention of eventually becoming either a civil or road deputy in the Trumbull County Sheriff's Department. (*See* Orr Dep. at 132:19–22—133:1–2.) When the Plaintiff subsequently learned that such transfers were not the policy of the Sheriff's Department, he was understandably upset. (*See* Orr Dep. 133:3–18.) The Plaintiff alleges that he subsequently stated to Sheriff's Department administrators, including Sheriff Altiere, that he thought that the hiring practices in the department were not "equally fair." (Orr Dep. at 132:1–3.) The Plaintiff claims that this statement prompted his discharge.

Additionally, the Plaintiff alleges that shortly after he was hired in 1997, Chief Montgomery requested that he confidentially provide information about a co-worker who was encouraging reserve deputies, road deputies and corrections officers to file private lawsuits against the Sheriff's Department. (*See* Orr Memo in Response to Mot. for Summ.J. at 1; Defts.' Mot. for Summ.J. at 2; Montgomery Affidavit ¶ 4.) Chief Montgomery has admitted to making such a request and has also admitted that the Plaintiff told him that it was Captain William Bebech ("Captain Bebech") who was encouraging such suits. (*See* Montgomery Affidavit ¶ 5.) The Plaintiff has further alleged that he was requested by "Trumbull management officials" to report to them about certain union activities. (*See* Amended Complaint at 2.)

The Plaintiff subsequently informed representatives of the OPBA about his conversation with Chief Montgomery and the request made of him. (*See* Orr Memo in

Response to Mot. for Summ.J. at 1.) The Plaintiff has asserted that Chief Montgomery knew of his report to the OPBA and that "highly placed members of management made clear to plaintiff that they were aware that plaintiff had advised the union of this request." (*See id.; see also* Amended Complaint ¶ 5.) The Plaintiff contends that he was discharged in retaliation for reporting Chief Montgomery's requests to the OPBA.

The Defendants assert that the Plaintiff was discharged for reasons other than his union activities and speech. The following reasons have been offered by the Defendants for the Plaintiff's discharge: (1) repeated difficulty cooperating with fellow employees; (2) periodic failure to control temper; (3) failure to treat fellow staff members and inmates with the proper degree of respect; and (4) complaints lodged against the Plaintiff by jail inmates. (*See* Defts.' Mot. for Summ.J. at 1.) Additionally, the Defendants were also motivated to discharge the Plaintiff by "[the] plaintiff's poor work performance, lack of dependability, [and] poor attendance." (*See id.*)

## OFFICIAL CAPACITY SUIT AGAINST SHERIFF ALTIERE

■ As an initial matter, the Court must determine whether Sheriff Altiere, in his official capacity, is a proper party to this lawsuit. It is axiomatic that a suit against a county officeholder in his official capacity is identical to a suit against the county. *See Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir.1999) (*citing Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). *See also Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, the claim asserted by the Plaintiff against Trumbull County and against Sheriff Altiere in his official capacity are one in the same.

## SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *See Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *See Id.* at 249, 106 S.Ct. 2505.

### A. Sheriff Altiere as Policy–Maker

■ To establish liability against Trumbull County, the Plaintiff must demonstrate that the alleged violation of his First Amendment rights was caused by a county policy or custom. *See Fox*, 176 F.3d at 348 (*citing Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018). The Plaintiff must, therefore, "identify those officials or governmental bodies who speak with final policy-making authority for the local governmental actor concerning the action alleged

to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). A policy or custom may be made by county commissioners or "by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Determining whether a governmental actor had final policy-making authority is a question of state law and the Court must review "the relevant legal materials, including state and local positive law, as well as 'custom and usage' having the force of law." *Jett, supra (citing St. Louis v. Praprotnik,* 485 U.S. 112, 124 n. 1, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

■ The relevant State law establishes that the county sheriff is the final policy-making authority with respect to county jail operations. Sheriff Altiere, as Trumbull County Sheriff, has jurisdiction over the county's jail facility. *See* Ohio Revised Code § 307.021(A). In order to operate and maintain such a facility, the Sheriff must employ corrections officers. *See* O.R.C. § 341.05(A)(2). Therefore, Sheriff Altiere has the power to make and implement employment policies and decisions.

Furthermore, there is direct evidence that Sheriff Altiere was the final policy-maker concerning employment decisions. Sheriff Altiere was the official to whom other administrators referred the Plaintiff for disciplinary action. Sheriff Altiere made the final decision to extend the Plaintiff's probationary period six more months. Additionally, Sheriff Altiere has stated under oath that "The final decision to terminate Mr. Orr's employment rested solely with me." (Sheriff Altiere Affidavit ¶ 8.) As such, the Court concludes that Sheriff Altiere was the only official with the power to discipline and discharge the Plaintiff.

Based upon the foregoing, the Court concludes that Sheriff Altiere is the final policy-maker concerning the employment

of corrections officers at the Trumbull County Jail. Therefore, when Sheriff Altiere terminated the Plaintiff, his action may reasonably be described as the "official policy" of Trumbull County.[1] It necessarily follows, then, that the County was the "moving force" behind the alleged injury. *See Fox,* 176 F.3d at 348 *(citing Board of County Commissioners of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Accordingly, the alleged violation of the Plaintiff's First Amendment rights was the result of Trumbull County policy.

### B. First Amendment Violation

The Plaintiff alleges (1) that he was discharged because he made a statement concerning hiring practices for civil and road deputies in the Sheriff's Department; and (2) that he was discharged because of his communication with local OPBA representatives concerning Chief Montgomery's request for information about a co-worker and alleged request that he report union activities to Sheriff's Department administrators. The Court must determine, as a threshold matter, whether the Plaintiff's speech and associational activities were protected. *See Pickering v. Board of Education of Township High School District 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ A public employee's speech is protected where "(1)[it] addresses a matter of public concern, and (2) the employer has no overriding state interest in efficient public service that would be undermined by the speech." *Meyers v. City of Cincinnati,* 934 F.2d 726, 729 (6th Cir.1991) *(citing Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). Whether the Plaintiff's speech is protected is a question of law. *See id.*

■ The Court must first determine whether the Plaintiff's speech addressed a matter of public concern. The Supreme

---

1. It was established above that Sheriff Altiere, acting in his official capacity, and Trumbull County are treated as the same entity in suits of this nature.

858

Court in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. 1684. *See also Dambrot v. Central Michigan University,* 55 F.3d 1177, 1187 (6th Cir.1995) ("The court must ask to what purpose the employee spoke. Controversial parts of speech advancing only private interests do not necessarily invoke First Amendment protection.") Furthermore, whether a public employee's speech addresses a matter of public concern depends on "the content, form, and context of [the] given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

■ The Plaintiff claims that he was discharged for making one statement concerning the hiring practices of the Sheriff's Department. At a meeting with "all the administration and [his] union rep.," the Plaintiff stated that he believed that "the hiring practices at the sheriff's department weren't equally fair." [2] (Orr Dep. at 132:7–8, 1–3.) The Plaintiff's First Amendment speech claim fails because nothing in the Plaintiff's statement reflects a problem with Sheriff's Department hiring practices about which the public would be concerned.[3] The Plaintiff's statement merely reflected his displeasure with how the hiring practices affected him. The Plaintiff's statement, therefore, concerned

his own personal interests and not a matter with which the public would be concerned. Accordingly, the Plaintiff's statement to Sheriff Altiere and other Sheriff's Department administrators did not address a matter of public concern and is not entitled to First Amendment protection.

■ The Plaintiff additionally contends that he was discharged for engaging in union activities because he reported to his OPBA representative that Chief Montgomery requested information from him concerning an OPBA member who was encouraging private lawsuits against the Sheriff's Department. When analyzing a First Amendment retaliation claim based on a plaintiff's associational activities, the Court must apply the same "public concern" test used above. *See Monks v. Marlinga,* 923 F.2d 423, 425 (6th Cir.1991), ("[N]o logical reason exists for distinguishing between speech and association in applying [the public concern test] to first amendment claims."). As such, the Court must determine whether the Plaintiff's associational activities touched upon a matter of public concern or were of purely personal interest.

It has already been established that the Plaintiff was asked by Chief Montgomery for information about an OPBA member who had been encouraging private lawsuits against the Sheriff's Department. The Plaintiff stated in his deposition that he was afraid that if he did not tell Chief Montgomery that Captain Bebech was encouraging private lawsuits, that he would lose his job. (*See* Orr Dep. 175:15–19) Subsequently, the Plaintiff contacted an OPBA representative, Pete Lucic ("Lu-

2. The Plaintiff made his statement in a meeting with Sheriff's Department administrators scheduled to investigate a grievance that had been filed against the Plaintiff by an inmate at the jail where he worked. The Sixth Circuit in *Chappel v. Montgomery County Fire Protection District No. 1,* 131 F.3d 564, 579 (1997), held that "Constitutional protection for speech on matters of public concern is not premised on the communication of that speech to the public." Accordingly, the fact that the Plaintiff made his statement privately

to Sheriff Altiere and other Sheriff's Department administrators has no bearing on the Court's determination whether the statements touched upon matters of public concern.

3. The case *sub judice* is entirely unlike those, for example, in which the plaintiffs' speech was politically charged or involved an abuse of public trust. *Compare Meyers v. City of Cincinnati,* 934 F.2d at 729–30, and *Chappel v. Montgomery County Fire Protection District No. 1,* 131 F.3d at 578–79.

cic"), and informed him of his conversation with Chief Montgomery. (*See* Orr Dep. 175:7–22—176:1.) Lucic arranged a meeting with Captain Bebech at which time the Plaintiff apologized for naming him as the one who was encouraging lawsuits. (See Orr Dep. 179:2–13.) The Plaintiff also was afraid that if an active union member reported what he told Chief Montgomery he could lose membership in the union. (*See* Orr Dep. 179:2–13; 181:20–22—182:1–5.)

 The Plaintiff's associational activities did not touch upon a matter of public concern, but rather were directed at protecting his personal interests. After meeting with Chief Montgomery, the Plaintiff attempted to reconcile his statements with Captain Bebech, and with the union, as evidenced by his apology to Captain Bebech. (See *id.*) The Plaintiff's actions in connection with Chief Montgomery's inquiry, however, did not involve OPBA activities or the local OPBA membership and cannot be construed as a matter of public concern.[4] Rather, the Plaintiff's actions were undertaken to maintain his employment as a corrections officer and his union membership. As such, the Plaintiff's associational activities do not deserve First Amendment protection.

Taking the facts in a light most favorable to the non-moving party, the Plaintiff has failed to establish the first element of a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983 on both his speech and association claims. Accordingly, the Defendants are entitled to summary judgment.

## CONCLUSION

The Plaintiff cannot establish that either his speech or his associational activity touched upon matters of public concern. The Plaintiff's statement about the Sheriff's Department hiring practices was of purely personal interest. Furthermore,

the Plaintiff's activities in connection with Chief Montgomery's inquiry and his discussions with the OPBA did not involve a matter of public concern. Rather, the Plaintiff was trying to protect his personal interests in maintaining his employment and union membership. As such, the Plaintiff has failed to establish the first element of a First Amendment retaliation claim under 42 U.S.C. § 1983. Therefore, neither his statement nor his activities deserve First Amendment protection.

Accordingly, the Defendants Motion for Summary Judgment (Dkt.# 28) is **GRANTED**.

**IT IS SO ORDERED.**

---

4. Captain Bebech has stated under oath that "None of the events related by plaintiff in his deposition had any effect on the OPBA, its collective bargaining or any of its other activities." (Bebech Affidavit ¶ 4.) Additionally, Pete Lucic has stated under oath that "[the events alleged by plaintiff] are unrelated to the union or its activities, except to the extent that Mr. Orr and Captain Bebech were members of the OPBA." (Lucic Affidavit ¶ 13.)