**Willie HOLBROOK, Administrator of the Estate of Brenda Kay Holbrook, Deceased, Appellant,**

v.

**W. A. ROSE and Sterling Drug, Inc., Appellees.**

Court of Appeals of Kentucky.

June 26, 1970.

Rehearing Denied Oct. 23, 1970.

Scott Collins, Prestonsburg, for appellant.

Joe Hobson, Prestonsburg, George Chad Perry, III, Paintsville, for W. A. Rose.

J. K. Wells, Paintsville, David O. Welch, Ashland, for Sterling Drug, Inc.

REED, Judge.

This is an action for wrongful death. The decedent, Brenda Kay Holbrook, was a three-year-old child who died about two days after being administered a worm medicine manufactured by the appellee, Sterling Drug, Inc., which had been purchased

from a retail druggist, the appellee, W. A. Rose. The child's father, as her personal representative, based the action against the manufacturer and the druggist on alternative theories of liability. These theories were negligence, breach of warranty, both express and implied, violation of a statutory provision governing the sale of poisonous drugs, and strict liability for the sale of an unreasonably dangerous product under the principle declared in Section 402A of the Restatement of Torts 2d, which has been adopted and followed in this jurisdiction. Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W. 2d 441 (1966); Briner v. General Motors Corporation, Ky. (decided June 12, 1970).

At the close of the plaintiff's evidence, the manufacturer and the druggist both moved for directed verdicts. The trial judge sustained the motion made on behalf of the druggist and he was discharged from liability at this point. At the conclusion of all of the evidence, the manufacturer again moved to direct a verdict in its behalf but its motion was overruled as had been done previously. The case was submitted to the jury and a verdict for the plaintiff was returned in the amount of $15,000, plus $400 burial expenses. Thereupon, the manufacturer moved for judgment notwithstanding the verdict. The trial judge sustained this motion on the basis that the manufacturer's motion for a directed verdict made at the conclusion of all of the evidence should have been sustained. Thereafter, judgment for the manufacturer was entered and the plaintiff appeals. It is his contention that the trial court erred in setting aside the verdict of the jury and also erred in dismissing the druggist from the case.

According to plaintiff's evidence, he was informed that his family should be treated for the presence of worms. He visited his local druggist, Rose, and inquired if Rose had available medicine for worms. Rose told him that he sold a worm medicine called "Jayne's RW Vermifuge."

This medicine is a tablet containing hexylresorcinol, which is sold over the counter. Plaintiff purchased two bottles of this medicine. One bottle contained regular dosage tablets (for persons over six years of age) and the other contained children's dosage tablets (for children under six years of age). On the label of the package containing children's pills was this statement: "Keep this and all medicines out of the reach of children," and "CAUTION—Tablets must be swallowed WHOLE—not chewed or crushed. Examine the mouth thoroughly to make sure children do not hide tablets under the tongue or in the cheeks." Packaged with the medicine was a pamphlet containing instructions as to usage.

Early on Saturday morning, plaintiff read all the instructions on the bottle aloud, and his 25-year-old daughter placed three pills, one by one, into the mouth of her three-year-old sister, Brenda Kay, telling her not to chew them. These three pills, which were taken from the bottle for children under six, were the recommended dosage for a child of that age. Brenda chewed the pills.

Later Brenda's lips became parched and her mouth was sore and raw. She continued to play. She ate her meals, although she would not eat as much as usual. Periodically she would indicate discomfort in her mouth. On Sunday afternoon, she started vomiting. By Monday morning she was so acutely ill that her parents gave her half an aspirin and took her to the hospital. She was examined by Dr. Lon Hall, a pediatrician, who found her respiration fast and labored. She was semicomatose. Her condition steadily deteriorated until she died on the following Tuesday morning at about 2 a. m. as an immediate result of respiratory failure preceded by convulsions.

The principal ingredient of Jayne's RW Vermifuge tablets is hexylresorcinol. Hexylresorcinol is made by adding to the six-carbon ring in resorcinol a six-carbon

straight change. The drug has been on the market since 1933 in the same tablet form, and as many as 30 million people have used it. Prior to its marketing, it was tested on animals and humans. None of the witnesses, expert or lay, knew of any human death from hexylresorcinol. It has long been known that the drug causes superficial erosion of the mucous membrane of the mouth when it comes in contact with the tissues of the mouth, and it may act as a gastric irritant. Relatively little of it is absorbed, however, and in case of overdosage, it acts as its own emetic and is also carried off by the kidneys. The purpose of covering the drug with a heavy outer surface is so that the contents will not be released until the pill reaches the intestinal tract. In that way, the body does not absorb as much of the drug; it is quickly eliminated from the system; the uncomfortable side effect of ulceration of the mucous membrane of the mouth is eliminated.

■ KRS 217.400 applies to the marketing of poisons. Plaintiff seeks to impose liability upon the manufacturer and druggist by reason of the provisions of this statute that require warnings and information as to antidotes. The drugs or preparations with which it is concerned are those according "to standard works on medicine or medica [that are] liable to be destructive to human life in quantities of sixty grains or less." Although a pathologist, Dr. James Miller, opined that this drug could cause death if ingested in sufficient quantity, he did not know of any instance where death to a human had resulted. He had consulted the literature in the field and there was no such indication in any of it. The plaintiff's witness, Dr. Hall, the pediatrician, had made extensive research of the literature in the field. He could find nothing to indicate the drug was regarded as dangerous. Dr. Brown, who had been responsible for introduction of the drug to the trade in 1933, testified that no deaths of humans by reason of the drug had ever been reported.

Dr. Miller's testimony, although indicating that a dose of this medicine considerably in excess of the recommended dosage could cause death, cannot be accepted as proof that the medicine is established in standard works on medicine or medica as liable to be destructive to adult human life in quantities of sixty grams or less. There is a complete absence of evidence on which any possible applicability of KRS 217.400 could be based.

■ This leaves then the plaintiff's alternative claims of negligence, breach of warranty and strict liability. We need not discuss the various refinements and considerations concerning the application of these theories of liability, because all of them have one common denominator which is that causation must be established. Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited, the product must be a legal cause of the harm.

■ Generally, the existence of a defect in the product itself may be established by a sufficient quantum of circumstantial evidence. Proof of legal causation is required in cases involving liability for products including drugs; again in this instance, legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm. See Frumer and Friedman, Products Liability, Sec. 33.01(4), p. 264. See also article by Keeton in 56 Calif.L.Rev., p. 149 (1968).

Although we have never had prior occasion to consider the quantum of circumstantial evidence necessary to satisfy

the plaintiff's burden as to legal causation in a products liability case involving drugs, under the strict liability theory, we have had occasion to consider the problem as it relates to other products. See Post v. American Cleaning Equipment Corp., Ky., 437 S.W.2d 516 (1968); Briner v. General Motors Corporation, Ky. (decided June 12, 1970). In the last cited case and in Bartley v. Childers, Ky., 433 S.W.2d 130 (1968), the essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from "possibility" to "probability." An aspect of the problem has been recently considered in an article by Savage in 58 Ky.L. J., p. 453–466 (1970). In that article the author would prefer to regard the requirement of "probability" in the area of medical causation as meaning "more likely than not." In the Briner case, we held the plaintiff's evidence was insufficient to permit the jury to find causation because the evidence failed to establish "a reasonable probability" that a defect in the product was responsible for the harm.

In the case before us, the attending physician retracted his original finding which had been arrived at prior to laboratory reports. At the trial in which he testified as a witness for the plaintiff, the physician stated that in his opinion the manufacturer's product taken in the recommended dosage as was the evidence, could not have produced the condition that resulted in Brenda's death. A stipulation which contained the findings of an expert on toxicology established that another drug called Darvon was found present in the stomach contents of the child. This drug is a pain killer and, according to the physicians who testified for the plaintiff, it contains an ingredient which is sufficiently toxic to require it to be dispensed by prescription only and not over the counter. It was further established in plaintiff's evidence that this ingredient in Darvon, if given in sufficiently large doses or over

a period of time, can cause exactly the same symptoms which the child experienced just prior to death, including convulsions and respiratory depression. The toxicologist also found a trace of resorcinol in the kidneys. The uncontradicted expert evidence, however, is that the standard chemical tests do not differentiate between resorcinol and hexylresorcinol in the kidneys. Be that as it may, the toxicologist reported that his examination revealed the presence of no drug in a quantity sufficient to cause death and that the cause of death could not be determined from the evidence submitted to him.

The only expert who testified that the cause of death was the ingestion of the product sold by the manufacturer was a pathologist, Dr. Miller. He based his opinion specifically, however, on an inaccurate history. He categorically stated that the principal basis for his opinion was this history. Dr. Miller said that it was "medically reasonable" that the child died from the worm medicine because, according to what had been related to him, the child took the substance, immediately became ill, and in a short time died. He also testified that in his opinion hexylresorcinol in double the usual dose could cause stomach toxicity in a child, and that based solely on the history that hexylresorcinol was the only drug she ingested and that she became immediately ill after taking it and died a short time later, this was the cause of death. The plaintiff's own evidence, however, destroys the basis of that conclusion. The evidence was that the child took only the recommended dosage; that it was well into the next day before she became sufficiently ill to warrant concern, and that prior to her death she had ingested from some source a pain-killing prescription drug which contained an ingredient sufficiently toxic when taken under circumstances of more than recommended dosage or repeated use to cause the same symptoms and condition as were present just prior to her death. There was no probative evidence that the manu-

facturer's product alone or in combination with another drug was a legal cause of her harm.

In our view, the evidence fails to rise to the quantum of circumstantial evidence required. The evidence failed to establish either that it was "probable" or "more likely than not" that the ingestion of the manufacturer's product was a legal cause of the harm. Once that issue is answered, there is no necessity to examine the other refinements of the various theories of liability as they might concern either the retail druggist or the manufacturer. Therefore, the disposition made by the trial court was correct.

The judgment is affirmed.

All concur.